IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **BAYLOR UNIVERSITY,**<br>Plaintiff,<br><br>*v.*<br><br>**VINATGE BRAND, LLC AND SPORTSWEAR INC. DBA PREP SPORTSWEAR**<br>Defendant. | 6:21-cv-409-ADA |

**MEMORANDUM OPINION & ORDER DENYING SPORTSWEAR'S MOTION
TO DISMISS FOR LACK OF PERSONAL JURISDICTION  [ECF No. 18]**

Came on for the consideration this date is Defendant Sportswear, Inc. ("Sportswear") Motion to Dismiss for Lack of Personal Jurisdiction (the "Motion") filed June 8, 2021. ECF No. 18. Plaintiff Baylor University ("Baylor") filed an opposition on June 22, 2021 ECF No. 20 to which Sportswear replied on June 29, 2021 ECF No. 22. After careful consideration of the Motion, the Parties' briefs, and the applicable law, the Court **DENIES** Sportswear's Motion.

**I. BACKGROUND**

On April 26, 2021, Baylor filed suit asserting causes of trademark infringement, counterfeiting, dilution, unfair competition, false designation of origin, and unjust enrichment. ECF No. 1 (the "Complaint"). Baylor filed the Complaint alleging that both Sportswear and Vintage Brand, LLC. ("Vintage Brand") offered and sold products that infringed on Baylor's Asserted Trademarks on their respective websites. ECF No. 20 at 3. Baylor identified the trademarks that Sportswear and Vintage Brand infringed on: U.S. Trademark Nos. 1,467,390, 1,467,391, 1,467,491, 1,468,277, 1,474,216, 1,558,080, 1,858,559, 1,923,603, 1,935,130,

1

1,936,714, 2,780,109, 4,850,373, 4,958,203, 5,007,920, 5,007,921, 5,007,923, and 5,708,242 (collectively, the "Asserted Trademarks"). ECF No. 1 ¶ 22.

Sportswear, incorporated in Washington, has its principal place of business in Washington. ECF No. 18 at 1. Sportswear is an online store that sells customizable, made-on-demand ornamented apparel and other goods to fans and supporters of various K-12 schools, colleges, government organizations, sports teams, international teams, Greek organizations, the military, and destinations throughout the country. ECF No. 18 at 2. Customers visiting Sportswear's website, <www.prepsportswear.com>, create their own apparel by picking a brand, such as a Russell Men's NuBlend branded T-shirt, and then choosing a design and color to apply to the apparel. *Id*. at 2.

Baylor is a Texas non-profit corporation organized under the laws of Texas. It resides in Waco, Texas. Baylor provides a wide curriculum of educational services through its colleges and schools at undergraduate and graduate levels. ECF No. 20 at 2. Baylor owns and uses several trademarks, including the BU Logo, the BAYLOR Mark, the BAYLOR BEARS Mark, the BAYLOR BEARS B Mark, and the SIC 'EM Marks (collectively, the "Baylor Marks") used in connection with its educational services and other goods and services. *Id*. at 2. Furthermore, Baylor's official school colors are green and gold, and many products from Baylor and its authorized licensees feature the Baylor Marks and incorporate that color scheme into the products. *Id*. at 2.

The Complaint alleges that Sportswear violated 15 U.S.C. § 1051 by selling unsanctioned apparel decorated with various common law, state, and federally registered trademarks, the Baylor Marks. ECF No. 1 ¶¶ 57–80. Baylor alleges that both Sportswear and Vintage Brand offered and sold (the "Accused Counterfeit Products") on their respective websites. ECF No. 20 at 5. It alleges

both parties intentionally and knowingly sought to trade off the reputation and goodwill of Baylor. *Id*. at 5. By using the Baylor Marks to sell apparel, both Defendants targeted the market created by Baylor in Texas, where many, if not most, students, faculty, staff, alumni, and fans would be expected to reside. *Id*. at 5.

Vintage Brand has not challenged jurisdiction in this case, but Sportswear has challenged jurisdiction. ECF No. 18 at 1. Sportswear asserts it is not subject to this Court's jurisdiction for three reasons. First, it entered into a license with Baylor, which gave Sportswear a non-exclusive, limited license to use certain of Baylor's trademarks in specified manners. ECF No. 18 at 2–3. Baylor does not dispute the existence of the licensing agreement, which expired in 2016, but argues that the Accused Counterfeit Products constitutes a material breach of the license. ECF No. 20 at 4. Second, Sportswear asserts that its contacts with the state through its contractual relationship with Vintage Brand alone is not enough for this Court to gain jurisdiction over it. ECF No. 18 at 3. Third, Sportswear claims that one sale to the forum state is not enough for this Court to have jurisdiction over it. *Id*. at 1.

Baylor states that this Court does have jurisdiction because Sportswear is both a seller and a manufacturer, and it targeted Baylor and its consumer fans in Texas. ECF No. 20 at 5. Furthermore, Sportswear took no action to limit the possibility that it may be subject to suit here (for example, by refusing to sell or ship to Texas customers). *Id*. at 5. Baylor alleges this because Sportswear has subjected itself to specific jurisdiction in Texas courts. *Id*. at 5.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. The plaintiff has the burden of establishing jurisdiction. *Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 233 (5th Cir. 2016). When a court assesses

a non-resident defendant's challenge to personal jurisdiction without holding an evidentiary hearing, the plaintiff bears the burden of presenting "sufficient facts" for a *prima facie* case of personal jurisdiction. *Thiam v. T-Mobile USA, Inc.*, No. 4:19-CV-00633, 2021 WL 1550814, at *1 (E.D. Tex. Apr. 20, 2021); *Celgard, LLC v. SK Innovation Co., Ltd.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015). The court accepts the allegations in the plaintiff's complaint as true, except when the defendant's affidavits contradict them. *Thiam*, 2021 WL 1550814, at *1. However, "genuine, material conflicts" between the facts in the parties' affidavits and other evidence are construed in the plaintiff's favor. *Id.*

Establishing *in personam* jurisdiction in a federal question case is a two-step inquiry (at least when the implicated federal statute does not provide for service of process). First, a court asks whether a defendant is subject to the jurisdiction of a state court of general jurisdiction under state law. Fed. Rule Civ. Proc. 4(k)(1)(A). This requires measuring the reach of the state's long-arm statute in which the federal court sits. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Second, the court asks if the exercise of personal jurisdiction would exceed the limitations of due process. *Id.* Since the Texas long-arm statute extends to the limits of due process, *see BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002), the Court need only focus on the due process aspects of the personal jurisdiction question, *see Jackson v. Tanfoglio Giuseppe S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010).

The constitutional inquiry requires the court to consider (1) whether a defendant has purposefully availed itself of the protections and benefits of the forum state by establishing "minimum contacts" with the state and (2) whether the exercise of jurisdiction comports with traditional notions of "fair play and substantial justice." *Tanfoglio*, 615 F.3d at 584. Minimum

contacts are satisfied by contacts creating either general or specific jurisdiction. *Thiam*, 2021 WL 1550814, at *2 (citing *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)).

A corporation is only subject to general jurisdiction when its contacts with the state are so "continuous and systematic" that they render it "essentially at home" in the forum state. *Daimler AG*, 571 U.S. at 138–39. Ordinarily, a corporation is only subject to general jurisdiction where it is incorporated or has its principal place of business. *Daimler AG*, 571 U.S. at 137, 139 n.19.

"The Federal Circuit applies a three-prong test to determine if specific jurisdiction exists: (1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010). The plaintiff has the burden to show that minimum contacts exist under the first two prongs, but the defendant has the burden of proving that the exercise of jurisdiction would be unreasonable under the third. *Elecs. For Imaging Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003). The Federal Circuit has counseled, however, that the exercise of jurisdiction is unreasonable only in "the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1568 (Fed. Cir. 1994) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

The test of reasonableness and fairness is "a multi-factored balancing test that weighs any burdens on the defendant against various countervailing considerations, including the plaintiff's interest in a convenient forum and the forum state's interest in resolving controversies flowing from in-state events." *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 429 (Fed. Cir.

1996) (citing *Burger King*, 471 U.S. at 477). This test requires balancing the following factors: "(1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the interest of the states in furthering their social policies." *Viam Corp.*, 84 F.3d at 429.

### III. ANALYSIS

The Complaint alleges that Sportswear is subject to this Court's personal jurisdiction pursuant to 15 U.S.C. § 1121 because Baylor raises a federal question this Court should answer. ECF No. 1 ¶ 5. Sportswear claims that this Court is without personal jurisdiction to hear Baylor's claims because the Complaint makes no express assertions about how this Court has personal jurisdiction over Sportswear. ECF No. 18 at 2.

**A.   The Court does not have General Jurisdiction over this dispute**

The Court does not have general jurisdiction over Sportswear because it is a Washington corporation with its principal place of business in Seattle, Washington. *Id*. at 4. Sportswear does not have a presence in Texas: no registration to do business, no offices or employees, no leases or property ownership, no Texas bank account, and no Texas tax payments. *Id*. at 4.

**B.   The Court does have Specific Jurisdiction over this dispute**

Although this Court does not have general jurisdiction over Sportswear, personal jurisdiction may nevertheless be proper if specific jurisdiction exists. The Court finds that it does.

1.   <u>Sportswear Purposefully Directed Its Activities in Texas</u>

The Court finds that Sportswear engaged in business purposefully directed at Texas because Sportswear: (1) advertised the Accused Counterfeit Products in the forum state of Texas;

(2) the Accused Counterfeit Products were similar in nature to Baylor's own products; and (3) actually sold the Accused Products in the forum state.

First, Sportswear does not dispute that it created the Accused Counterfeit Products as a manufacturer for Vintage Brand, nor does Sportswear dispute it advertised the Accused Counterfeit Products on Vintage Brand's own website. Sportswear suggests its relationship with Vintage Brand bears little weight because the two companies are separate entities. *Id*. 18 at 3–4. It argues Baylor's reliance on *Luv n' care Ltd. v. Insta-Mix, Inc*., a Louisiana case, is improper. 438 F.3d 465 (explaining foreseeability that a company's product will enter into the forum state from another third party is enough to subject it to a forum's jurisdiction.) ECF No. 22 at 3. It argues this because Texas courts require that minimum contacts are based not only on the foreseeability that the product would enter the forum state but also on the stream of commerce plus test articulated in the *Asahi* opinion. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 873 (Tex. 2010). The stream of commerce plus test requires some "additional conduct" besides just placing the product in the stream of commerce. *Id*. What "additional conduct" is required for a company to have "an intent or purpose to serve the market in the forum State." *Id*. Examples of "additional conduct" are "(1) 'designing the product for the market in the forum State,' (2) 'advertising in the forum State,' (3) 'establishing channels for providing regular advice to customers in the forum State,' (4) 'marketing the product through a distributor who has agreed to serve as the sales agent in the forum State.'" *Id*.

The Court finds Sportswear's minimum contacts with Vintage Brand sufficient based on the stream of commerce plus test by Sportswear's designing the Accused Counterfeit Products for the market in the forum state and advertising in the forum state. *See id*. Sportswear does not dispute the Accused Counterfeit Products it manufactured for Vintage Brand were advertised as "[t]he

7

Vintage Brand Baylor Bears Shop at VintageBrand.com is the ultimate destination for die-hard Baylor Bears fans and alumni. . . ." ECF No. 1 ¶ 42. Furthermore, Sportswear took no action to limit its advertisement or selling to the forum state by refusing to sell or ship to Texas customers. ECF No. 20 at 5.

Second, Sportwear does not dispute that it advertised its manufactured the Accused Counterfeit Products bearing the Baylor marks, mainly in Baylor's signature green and gold color, on its website until as recently as March 2021. *Id*. at 3. Sportswear discounts its advertising to the forum state by arguing Baylor has not and cannot claim exclusive rights to the word "Bears" on clothing, given that approximately 1,848 other K-12 schools and 38 other colleges use some form of "Bears" as a mascot. ECF No. 22 at 6. While there is a large amount of "Bears" mascots throughout the nation, the word "Bears," specifically with green and gold color in the forum state of Texas, is just as synonymous with Baylor as would be "Longhorns," specifically with burnt orange and white with the University of Texas.

Sportswear purposefully directed its activities at the residents of the forum state by creating its Accused Counterfeit Products to look identical or substantially indistinguishable from Baylor's own products. ECF No. 1 at 17–18. The United States Patent and Trademark Office describes that courts need to look to the similarity in appearance when parties dispute over marks. Trademark Manual of Examining Procedure §1207.01(b)(ii). When contested items are confusingly similar in appearance to the trademarked items, consumers can conflate the counterfeited item with a real one. *See In re E. I. du Pont de Nemours & Co*., 476 F.2d 1357, 1361 (C.C.P.A. 1973). Here, the likelihood of confusion is particularly high. Comparing Sportswear's Accused Counterfeit Products and Baylor's own genuine products, the items are confusingly similar in appearance. This

similarity could lead to forum purchasers conflating Sportswear's Accused Counterfeit Products and Baylor's own genuine products.

Third, Sportswear does not dispute that it sold a product to the forum state of Texas in 2014. ECF No. 18 at 2. Sportswear argues that a "single isolated sale" is insufficient to establish minimum contacts and that "something more" is required to establish minimum contacts with the state, citing *McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 888–89 (2011). ECF No. 18 at 11–12. The majority opinion, however, did not support this idea, and as such, the Fifth Circuit has observed that the narrower holding in *McIntyre* has not changed the Fifth Circuit's jurisdictional analysis. *Ainsworth v. Moffett Engineering, Ltd.*, 716 F. 3d 174, 177 (5th Cir. 2013). The Court determined that "[t]he minimum contacts requirement is met so long as the court finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state." *Id*.

The Fifth Circuit has observed that when specific jurisdiction is not found, it is not because the defendant's minimum contact was inadequate "but rather that such contacts that exist do not count because they have not been established purposefully by the defendant." *Pervasive Software, Inc. v. Lexware GMBH & Co. KG*, 688 F.3d 214, 222 (5th Cir. 2012); see also *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1127 (W.D. Penn. 1997) ("[T]he Supreme Court has made clear that even a single contact can be sufficient."). This Court holds that Sportswear purposefully directed its activities with the forum state by purposely selling to the forum state.

Sportswear purposely directed this conduct at Texas, and, as explained below, the Court is satisfied that Baylor's claim arises out of or relates to this conduct.

2.      Baylor's Claims Arise Out of or Relate to Sportwear's Activities in Texas

9

The Complaint accuses Sportswear infringed on Baylor's Trademarks under at least 15 U.S.C. § 1051, because it makes and advertises the Accused Counterfeit Products. ECF No. 1 ¶ 4. Moreover, the Complaint defines the Accused Counterfeit Products as "BAYLOR, BAYLOR UNIVERSITY, and other marks that consist of or incorporate BAYLOR in commerce in connection with Baylor's high-quality educational services, as well as on a wide variety of related goods and services." *Id*. at ¶ 8. The Court is satisfied that Baylor's trademark claims arise directly out of Sportswear's advertisement and sale of the Accused Counterfeit Products to Texas, the forum state in this dispute. *See* ECF Nos. 1 and 20. Sportswear challenges this conclusion on two grounds. First, it posits Baylor has failed to show the claims arise out of the alleged forum contacts. ECF No. 18 at 9. Second, it argues that even if Baylor's claims arise out of the forum-related contacts, Baylor does show or allege how it suffered injury in Texas. *Id*. at 9.

To Sportswear's first point, the Court is satisfied that Baylor's claims arise out of or relate to Sportswear's Texas-centric contacts. The Complaint specifically identified the Asserted Trademarks that Sportswear has manufactured for Vintage Brand to be sold on its website as the Accused Counterfeit Products. ECF No. 1 ¶ 23. Sportswear has not controverted that allegation but admits it manufactures the Accused Counterfeit Products for Vintage Brand. *Id*. at ¶ 35–36. It is not difficult to discern Baylor's claims arising out of or relating to Sportwear's Activities in Texas when Sportswear manufactures the Accused Counterfeit Products for Vintage Brand, and then Vintage Brand markets those Accused Counterfeit Products as "the ultimate destination for die-hard Baylor Bears fans and alumni." ECF No. 20 at 4.

Second, Sportswear argues that even if Baylor's claims arise out of the forum-related contacts, Baylor does show or allege how it suffered injury in Texas. ECF No. 22 at 9. But Baylor showed how it suffered injury. Along with Vintage Brand targeting the forum state of Texas,

10

Sportswear placed no restrictions for the sale of its Accused Counterfeit Products on its own website. As recently as March 2021, Sportswear's website featured a section entitled "Bears Apparel Store," which contained a wide selection of shirts, sweatshirts, hats, and other apparel available for purchase bearing the Baylor marks, mainly in Baylor's signature green and gold color scheme. ECF No. 20 at 3. Baylor's claims arise out of or relate to Sportswear's targeting Texas consumers and offering to sell them the Accused Counterfeit Products. The fact that Sportswear was not more successful at exploiting the Texas market does not shield Sportswear from this Court's jurisdiction. The Court will not, at this stage, demand specific identification of every injury from Sportswear's manufacture and advertisement of the Accused Counterfeit Products.

### 3.  Exercising Jurisdiction is Reasonable and Fair

Because Baylor met its burden under the first two steps of the Federal Circuit's three-prong test, "the burden shifts to the defendant to prove that personal jurisdiction is unreasonable." *Freescale Semiconductor, Inc. v. Amtran Tech. Co., Ltd.*, No. A-12-CV-644-LY, 2013 WL 12121034, at *2 (W.D. Tex. June 12, 2013). It is a "rare" case where other considerations render jurisdiction unreasonable. *Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1351 (Fed. Cir. 2016) (citing *Burger King*, 471 U.S. at 477 (1985)). "In determining this fundamental fairness issue, the Court must examine (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies." *Oehring v. Spike Brewing, LLC*, No. 6:19-CV-00444-ADA, 2020 WL 3001052, at *4 (W.D. Tex. June 4, 2020) (citing *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir. 1993)).

Sportswear attempts to meet its burden with sparse arguments. It states that it is not "reasonable or fair" to exercise jurisdiction over Sportswear because it is a Washington corporation

11

with no presence in Texas: no registration to do business, no offices or employees, no leases or property ownership, no Texas bank account, and no Texas tax payments. ECF No. 18 at 4.

Baylor has the better argument. As to the first fairness factor, the burden on Sportswear is reasonable when balanced against the weight of Sportswear's conduct in Texas. "[J]urisdiction in this Court is neither unfair nor unreasonable where [Sportswear] 'knew the destination of its products, and its conduct and connections with [Texas] were such that it should reasonably have anticipated being brought into court there.'" *Semcon IP Inc. v. TCT Mobile Int'l Ltd.*, No. 2:18-CV-00194-JRG, 2019 WL 2774362, at *5 (E.D. Tex. July 2, 2019) (quoting *Nuance*, 626 F.3d at 1234). Further, "the inconvenience of litigating in a foreign state is by no means extraordinary in the federal courts." *Oehring*, 2020 WL 3001052, at *4. In this case, the injury to Baylor arises from the actions suffered in the forum state of Texas.

As to the second fairness factor, Texas also has a strong "interest in adjudicating injuries that occur within this state." *Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*, No. 6:20- CV-008876-ADA, 2021 WL 3931910, at *4 (W.D. Tex. Sept. 1, 2021) (citing *Beverly Hills Fan Co.*, 21 F.3d at 1568). Here, Sportswear manufactured and advertised its Accused Counterfeit Products on its own website and on Vintage Brand's website. Sportswear also specifically targeted Texas consumers, where Baylor has its most significant amount of consumers. Additionally, Sportswear shipped its Accused Counterfeit Product to Texas on at least one occasion. Baylor has accused Sportswear of infringing Baylor's trademarks, and therefore Texas has an interest in adjudicating this dispute.

As to the third fairness factor, Baylor's interest in convenient and effective relief may only be served by this Court exercising personal jurisdiction over Sportswear. "Courts uniformly agree the proper venue for a trademark infringement case lies where the infringing activity, or

the 'passing off' occurred." *Scrum All., Inc. v. Scrum, Inc.*, 2021 WL 1845154, at *6 (E.D. Tex. May 7, 2021) (quoting *Hopdoddy Burger Bar Inc. v. Blacketer*, 2015 WL 4624644, at *2 (W.D. Tex. July 31, 2015)). In trademark cases, "the wrong takes place . . . where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's." *Bacchanal Hosp., LLC v. Cured, LLC*, 2017 WL 1314194, at *4 (W.D. Tex. Feb. 24, 2017) (quoting *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 639 (2nd Cir. 1956)).

As to the fourth fairness factor, the judicial system's interest in efficient resolution of controversies favors exercising personal jurisdiction over Sportswear because there is no other forum with a greater interest in or ability to resolve the parties' dispute.

And as to the fifth fairness factor, Texas has an interest in furthering fundamental social policies by discouraging infringement of intellectual property rights. *Canon, Inc. v. TCL Elecs. Holdings Ltd.*, No. 2:18- CV-00546-JRG, 2020 WL 1478356, at *4 (E.D. Tex. Mar. 25, 2020) ("[T]he United States has an interest in furthering fundamental substantive social policies by discouraging infringement of intellectual property rights.").

The Court finds that personal jurisdiction over Sportswear is fair and reasonable.

## VI. CONCLUSION

In sum, the Court holds that it has personal jurisdiction over Sportswear for Baylor's claims, and exercising that jurisdiction is reasonable. For the foregoing reasons, it is **ORDERED** that Court **DENIES** Sportswear's Motion as to its 12(b)(2) grounds.

SIGNED this 12th day of May, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE